State v. Alexander.

---

## THE STATE v. ALEXANDER, Appellant.

### Division Two, November 22, 1904.

1. **VERDICT: Conflict of Evidence: Robbery.** Where by the corroborated evidence of the prosecuting witness, if believed, the defendant is guilty; and not guilty if the testimony of defendant and his accomplice is true, the court will not interfere with a verdict of guilty. In such case it is the province of the jury to pass upon the facts.

2. **———: Substantial Evidence.** Where there is substantial evidence to support the verdict, the judgment will not be reversed on the ground that the verdict is against the evidence or the weight of the evidence.

3. **ROBBERY: Instruction.** An instruction on robbery in the first degree, set out in the opinion, is held to be correct, and to require a finding of every essential fact necessary to constitute the offense.

4. **———: Evidence: Attempt to Influence Prosecutor.** The conduct of a defendant charged with a crime towards the prosecuting witness or any other witness, is a proper subject of inquiry. So testimony indicating any improper influence by him towards the witness to prevent him from testifying or to change his testimony, such as paying for his dinner at the time of the preliminary trial or his railroad fare to the place of the hearing, or threatening him if he testifies adversely, or warning him not to do so, or trying by any of these means to induce him to do so, is properly admitted, and cannot be excluded on the ground that it was evidence of the commission of another distinct offense, to-wit, that of bribery. Whether the acts of the defendant amounted to a commission of bribery or not, they are competent as a circumstance tending to show his consciousness of guilt.

State v. Alexander.

Appeal from Nodaway Circuit Court.—*Hon. A. D. Burnes,* Special Judge.

AFFIRMED.

*Jesse F. Robertson* and *B. R. Martin* for appellant.

(1) The court erred in refusing to sustain defendant's demurrer to the evidence offered at the close of all testimony. The whole of the witness Marshall's testimony is uncertain, unreliable, and too unstable and unsafe to base a conviction upon. He is so evasive, so prone to avoid a direct answer in his cross-examination, as to show that the whole of his testimony is but from the diseased and feeble memory of one who was maudlin drunk with whiskey, and so utterly irreconcilable and inconsistent as to mark it from the beginning as one of those special cases where the court will exercise its discretion in passing upon the whole of the evidence and determine from that viewpoint whether a conviction of the severe offense of robbery in the first degree shall be permitted to stand in this case. (2) The court erred in permitting the State to introduce any evidence whatever relative to the alleged attempt of defendant to get Marshall out of the country. The law is elemental that one on trial charged with a particular crime shall not be jeopardized by infusing into the case venom from some other crime. "Upon the trial of a party accused, evidence to show that the defendant has committed other crimes than that charged in the indictment is not admissible." State v. Harold, 38 Mo. 496; State v. Roberts, 33 Mo. App. 596; State v. Greenwade, 78 Mo. 298; State v. Williamson, 106 Mo. 169; State v. Spray, 174 Mo. 581; State v. Daubert, 42 Mo. 242; State v. Goetz and Martin, 34 Mo. 85.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1) There is certainly evidence showing guilt, and while it is true there is conflict in the testimony of

the defendant and that of the prosecuting witness, appellate courts are not inclined to invade the jurisdiction of the triers of fact. The jury has passed upon these questions under the instructions of the court, and their verdict, there being evidence showing guilt, will not be disturbed. State v. Banks, 118 Mo. 121; State v. Fisher, 124 Mo. 462. (2) No error was committed by the trial court in the admission of testimony. The record fails to show a single instance wherein the action of the trial court in passing upon the legality or the admissibility of evidence was in any way prejudicial to the rights of defendant. (3) The information is in conformity with the established precedents in this State. State v. Easton, 138 Mo. 103. It also follows the language of the statute (sec. 1893, R. S. 1899), as near as may be.

FOX, J.—This appeal is from a conviction of robbery in the first degree. "The defendant, William Alexander, was convicted at the November term, 1903, of the Nodaway circuit court upon an information preferred by the prosecuting attorney of Nodaway county charging him with robbery in the first degree, under section 1893 of the Revised Statutes of 1899, the offense charged being that he, together with one Barnard, by violence, etc., took from the person of one Lafayette Marshall a pocketbook containing money, the property of said Marshall, and his punishment being assessed at imprisonment in the penitentiary for the period of five years. Defendant and Barnard were jointly charged in the information aforesaid.

"The defendant asked a severance, which was duly allowed him by the court. At the time of his trial and conviction the defendant was twenty-six years of age. He resided with his father and mother in Burlington Junction, Missouri, and had lived there for several years prior to his arrest upon this charge. The offense whereof he was convicted is alleged to have been committed at the city of Burlington Junction, Nodaway

county, Missouri, Sunday, October 18, 1903. The robbery is alleged to have taken place in the afternoon of that day, at the 'Q' scales in Burlington Junction. The defendant and prosecuting witness were acquaintances, both of them living in Burlington Junction. The witness Marshall was a laboring man, worked upon the section for the Burlington Railway Company. Marshall and defendant met, in company with other parties, at the depot in Burlington Junction, sometime in the forenoon of the aforesaid Sunday. Marshall had just drawn his pay from the pay-car, amounting to ten dollars and sixty cents. The defendant, Marshall and three other men went together from the depot to the hotel where Marshall lived, and the defendant proposed to Marshall that they all get something to drink. Marshall gave the defendant a ten dollar gold piece and told him to get a quart of whiskey, which the defendant did, returning to Marshall nine dollars in change. Thereupon the defendant Barnard (jointly charged with defendant) and Marshall repaired to the 'Q' scales in Burlington Junction, where the three drank the quart of whiskey so purchased by the defendant. According to the testimony of Marshall, he was sitting down on the scales aforesaid and was somewhat under the influence of liquor. Barnard threw himself across Marshall's arms and held him while defendant went into his pocket and took therefrom his pocket book containing something near eight or eight and one-half dollars. After the alleged taking of the money aforesaid from Marshall, Barnard and defendant went up town and thence to their respective homes, while the witness Marshall went up town and then to his hotel. He told a butcher named Jones about the matter when he got up town, but did not make any complaint, or tell any officer of the law, or cause any warrant to be issued or arrest made until two days and nights thereafter. It appears that at the time of the alleged robbery Marshall was living at a hotel conducted by a man named Wallace, who, in addition to

being the conductor of the aforesaid hostelry, was also a lawyer—at least, he has been admitted to the bar. To this man Wallace the witness Marshall told the story of having had his money taken from him by the defendant and Barnard, and Wallace advised Marshall to have them arrested, telling Marshall that he, Wallace, would take care of his case, prosecute the defendant and Barnard and obtain his money for him. Marshall told Wallace that he had no money to pay his board while waiting for the trial, and Wallace told him he would 'hold him up' until after the trial. Thereupon Marshall went with Wallace and swore out the complaint. The defendant and Barnard were arrested and gave bond for their appearance at the November term, 1903, of the Nodaway circuit court.''

The State introduced testimony showing that, after the arrest of the defendant, defendant and prosecuting witness went off together, the defendant paying the expenses on this trip; it was shown while they were on this trip the defendant registered at a hotel as J. A. King, Quincy, Ill. A part of the conversation between Marshall and the defendant was as follows:

''Q. Did you have any talk with him coming down on the train? A. Yes, sir.

''Q. Now, tell this jury just exactly what he told you? A. Well, he asked me 'Where in the devil are you going? says he, 'Are you going back on me that way? Says I, 'I am going back.'

''Q. What did he say? A. He says 'You are a damned old fool; what are you going to do that for?'

''Q. Tell what else he said? A. We rode on a piece, and he says, 'You are in it now.' Says I, 'I can't help it; it's unbeknowing to me.'

''Q. Tell what he said? A. He says, 'I don't want you to go to that court and tell them I tried to hire you to get out of the country or give you any money.'

''Q. Tell all that he said there? Tell what he said in that connection? A. He says, 'If you tell them

you took money from me or I gave you the money to get away on, I will kill you, you damned old fool.' There was a couple of men in there.''

Other testimony was introduced, showing that defendant, the next day after the alleged robbery, had in his possession money of the description of that claimed to have been lost by the prosecuting witness.

The defendant denies the charge, and his testimony is in direct conflict with that of Marshall, the prosecuting witness. The direct and cross-examination of the prosecuting witness, as well as that of the defendant, was quite lengthy, consisting of minute details of the entire occurrence, which all may be summed up as a claim on the part of the prosecuting witness that he was robbed of the money as charged, and a denial by the defendant that he had robbed him. We will give the testimony further attention in the course of the opinion, hence there is no necessity of reproducing in full the testimony as developed at the trial of the cause.

Upon this cause being submitted to the jury upon the evidence and instructions of the court, they returned a verdict of guilty and assessed defendant's punishment at imprisonment in the penitentiary for a term of five years. Judgment was rendered in accordance with the verdict, and after unsuccessful motions for new trial and in arrest of judgment, in due time and form this appeal was prosecuted to this court, and it is now before us for consideration.

### OPINION.

The errors complained of in this cause are briefly stated in the motion for new trial, that is:

''The verdict of the jury is against the evidence and the weight of the evidence.

''The verdict of the jury is against the law and the evidence.

''The court erred in refusing instructions asked by the defendant numbered 1 and 2.

"The court erred in giving instruction marked number 1 offered by the State.

"The court erred in admitting incompetent testimony offered by the State."

Upon the first proposition, that the verdict is against the weight of the evidence, it will suffice to say that we have carefully considered in detail all the evidence developed at the trial of this cause, and find that it presents no exception to the general rule in cases of this character, that is, it has two sides, hence a conflict in the testimony upon the main facts.

The prosecuting witness, if his testimony is to be believed, makes out a case, as charged, of robbery. His testimony is corroborated in some features by the testimony of some of the other witnesses. On the other hand, if the testimony of defendant and his alleged accomplice is to be relied upon, there should be an acquittal. With this conflict in the testimony, it was specially the province of the jury to pass upon the facts. They had opportunities of determining the credibility of the witnesses that are not afforded this court. The witnesses were before the jury and doubtless all the tests of their credibility and the weight to be attached to their testimony were applied. While this court will not hesitate to reverse a case in the absence of substantial testimony to support the verdict, yet on the other hand, where there is substantial evidence upon which the verdict is based, it would be a dangerous precedent for an appellate tribunal to assume the burden of retrying the case from the mere cold disclosures in the record, without an opportunity of observing not only the general demeanor of the witnesses, but as well their manner and conduct on the stand when testifying. Except where there is a failure of proof, this court has uniformly and repeatedly announced the rule that it will not undertake to settle the conflict of testimony which usually arises in all cases which proceed to a formal trial. In State v. Fischer, 124 Mo. l. c. 462, BURGESS,

J., speaking for this court, said: ''The first contention set forth in the motion for new trial is, that the verdict of the jury is against the evidence. This court has so often held that it will not undertake to pass upon the sufficiency of the evidence to support a verdict, except where there is an entire failure of proof, that it would be but little less than a work of supererogation to refer to authorities upon the subject. Only a few of the more recent ones will be referred to. [State v. Young, 119 Mo. 495; State v. Banks, 118 Mo. 117; State v. Punshon, ante, p. 448.]''

It is unnecessary to pursue this complaint further; the record simply discloses a conflict in the testimony as to the guilt of the defendant; there is nothing in the record to indicate any passion or prejudice which influenced the jury in their conclusions, and we are unwilling to invade their province and retry the case upon the evidence disclosed by the record.

It is insisted that the trial court erred in its refusal of instructions numbered 1 and 2. Those instructions were simply demurrers to the evidence, requesting the court to direct the jury, under the law and evidence, to acquit the defendant.

What we have said in the discussion of the first proposition may be applied in the solution of this one. There was substantial evidence introduced by the State as to the guilt of the defendant, and, if true, it fully supports the verdict. It was for the jury to say whether they believed the witnesses for the State or defendant. The action of the trial court in its refusal of those two instructions was proper.

Instruction numbered 1 given by the court, of which defendant complains, is as follows:

''If the jury believe from the evidence beyond a reasonable doubt, that the defendant, at the county of Nodaway and State of Missouri, in the month of October, 1903, either alone, or with Lloyd Barnard, did, with an intent to rob, make an assault upon the witness

Lafayette Marshall, and by force and violence to his person, and against his will, did then and there unlawfully and feloniously rob, take, steal and carry away from the person of the said witness Marshall the money mentioned in the information, to-wit, one silver coin, one five dollar bank bill and four silver dollars, or any part thereof, and did so with the intent to convert the same to his own use, and to permanently deprive the said Marshall of the property therein, without his consent and against his will, and that said money was the property of the said Marshall, of any value whatever, you will find the defendant guilty of robbery in the first degree, as by the information he stands charged, and assess his punishment at imprisonment in the penitentiary for a term of not less than five years.''

That instruction is in harmony with the approved precedents and properly requires the jury to find every essential fact necessary to constitute the offense charged in the indictment.

This leads us to the only remaining contention of learned counsel for appellant, that is, the admission of incompetent testimony offered by the State. This complaint is directed against that feature of the testimony related by the prosecuting witness as to the trip he made with the defendant, after his arrest, and the paying of expenses and conversations had between them. Counsel insist that this testimony was admitted for the purpose of establishing against defendant another offense, that of bribery, and that such separate offense had no connection with or any tendency to prove the offense charged. We are not aware of the purpose for which the testimony was introduced, whether specially directed toward establishing the offense of bribing or not; but we are of the opinion that anything done by the defendant indicating that he did not want the prosecuting witness to be present at the trial against him, or to tell what he knew of the facts connected with the alleged robbery, whether his acts or conduct amounted to

the commission of the offense of bribery or not, was at least competent as a circumstance tending to show the consciousness of guilt on the part of the defendant; so, too, the weight to be attached to it was a matter for the consideration of the jury.

The conduct and action of a defendant charged with crime with the prosecuting witness or any other witness is always a subject of inquiry. If his conduct towards him or his association with him is unusual and has the slightest tendency to indicate any improper influence upon the witness, or to prevent him from testifying, it is a circumstance which the courts uniformly permit the jury to consider.

The State in this case had the right to show the association of the defendant with the prosecuting witness; the trip they made together; the fact of paying him money; and any other conduct which would indicate defendant's solicitude about the witness testifying in the cause. If, on the other hand, his actions toward him, or his association with him, or the trip related by the witness, were but the usual and ordinary acts of acquaintances, we can see no harm that could result to the defendant by the mere statement to the jury of what occurred at the time of starting or during the progress of the trip.

We have read with care and interest the details of the association with the prosecuting witness by the defendant after his arrest and before the trial, as well as his conduct and actions during the trip made by them, and have reached the conclusion that the action of the trial court in the admission of that testimony was proper.

The information in this case is in proper form, and in harmony with approved precedents. The testimony is conflicting, yet if the testimony of the State's witnesses was relied upon by the jury, it was ample to support their finding.

The court fully and fairly declared the law upon the case presented, and there is nothing left for this court to do except to affirm the judgment of the trial court, and that is so ordered.

*Gantt, P. J.,* concurs; *Burgess, J.,* absent.