## CITY OF POPLAR BLUFF, Appellant, v. JESSE REYNOLDS, Respondent.

Springfield Court of Appeals, June 6, 1910.

MUNICIPAL CORPORATIONS: Information: Unlawful Use of Water: Failure of Proof. The information filed by the city attorney of a city of the third class charged the defendant with the unlawful turning on and use of the city water which had been shut off from defendant's premises for nonpayment of rent. There was substantial conflict in the evidence as to whether the water had been shut off for non-payment of rent or at the request of defendant before an indebtedness had accrued. The trial court found that it had not been shut off for non-payment of rent, as charged in the information, and the defendant was acquitted. Held, that this finding will not be disturbed in the appellate court.

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard,* Judge.

AFFIRMED.

*David W. Hill,* City Counselor, for appellant

*Lew. R. Thomason* for respondent.

NIXON, P. J.—This case originated in the police court of the city of Poplar Bluff, by the filing of an affidavit of R. K. Andrews and upon which the city attorney filed the following information: (Omitting caption.)

"Now comes the undersigned city attorney, within and for the city of Poplar Bluff, county and State aforesaid, and upon his knowledge, information and belief and upon the complaint of R. K. Andrews, informs the court and charges the fact to be that the defendant Jesse Reynolds on or about the 22d day of May, A. D. 1907, at the City of Poplar Bluff, Missouri, and within the limits thereof, did then and there unlawfully and without first obtaining permission from the city clerk, city collector, chairman of the waterworks committee or without then and there having any other legal authority to do the same, did turn on the supply of city water to certain premises, to-wit, 730 Vine street, which said supply of city water had been shut off *for non-payment of rent,* and while such water supply to . such premises was turned off by order of the chairman of the waterworks committee contrary to and in violation of section 1075 of an ordinance of said city entitled, 'An ordinance in revision of the ordinances of the city of Poplar Bluff, Missouri, and to ordain and establish new and amended ordinance provisions for the government of said city,' passed and approved on the 6th day of March, 1899; and against the peace and dignity of the city of Poplar Bluff; whereby said defendant is indebted to said city in the sum of fifty dollars. Wherefore the plaintiff prays the court to declare and assess the penalties prescribed by ordinance for said offense and that it render judgment together with costs therefor and that the said

Jesse Reynolds stand committed to the city prison until judgment is complied with."

The ordinance upon which the prosecution was based, among other things, provides: "Any person who shall turn on a supply of water to any premises *which has been shut off for non-payment of rent, or for any other cause,* while turned off by order of the city clerk, or city collector, or chairman of the waterworks committee, without first having obtained a permit to do so from the city clerk or city collector or chairman of the waterworks committee, shall be deemed guilty of a misdemeanor, and upon conviction, shall be fined not less than five or more than fifty dollars, . . ."

Defendant was convicted before the police judge and his punishment assessed at a fine of five dollars and costs. An appeal was taken to the circuit court, where, upon trial *de novo* without a jury, the defendant was acquitted. The city has appealed.

The only assignments of error relied on are that the court decided the case against the weight of the evidence and the law under the evidence and refused to give the following declaration of law: "The court declares the law to be that if defendant turned the water on without permission after it had been turned off for non-payment of rent, *or for other cause,* then the finding must be for the plaintiff."

It will be noticed that the information charged that respondent turned on the water at 730 Vine street after it had been turned off "for non-payment of rent." We have examined the evidence carefully and have found no satisfactory proof of this allegation.

R. K. Andrews, the water commissioner, who filed the affidavit against respondent, stated that at the direction of Charles Penny, the chairman of the waterworks committee, he turned off the water at 730 Vine street; that Mr. Reynolds had said when he went down to pay his water bill on several houses that he did not want to pay on that house on account of it being vacant

and it was turned off; that Reynolds acknowledged to him before the trial in the police court that he turned on the water; and the woman at the house also told him that Mr. Reynolds had turned it on. "Q. You say Mr. Penny told you to cut the water off? A. He did. Q. What did he say to you at that time? A. Well, he just asked me to go up and cut it out as Mr. Reynolds had ordered it cut out. Q. Now, do you know whether—have you any personal knowledge whether or not Mr. Reynolds ordered the water cut out? A. Yes, sir, I do. Q. Well what—how do you know it? A. Because he said so right there in the office. Q. Mr. Reynolds told you to cut it out? A. Yes, sir. . . . Q. Now, did you ever notify him that you had cut the water out of that house? A. No, I did not go to him when he asked me to cut it out. Q. You just thought you would let him find out? A. He knew, because he told me to go up and cut it out. I said, 'All right, I'll do that.' "

This witness was recalled later and during his examination the court asked whether he could tell from the city collector's water account book which houses had been paid on and which had not. He answered that the water rent had been paid on all of Mr. Reynolds' houses but one, but he could not tell from the books which one that was. "Q. Tell the court how you know he did not pay on that house? A. Well, from the simple fact that the house was vacant at the time and Mr. Reynolds asked me to go there and cut it out. Q. To keep from paying rent on it? A. Yes, sir. Q. You can't tell from the bills which he paid on and which he did not, your reason given being because he told you to cut it out and it was vacant? A. Yes, sir. Q. The bills do say that one house was not paid for where he had water? A. Where he had water, yes, sir. Q. Now, was Mr. Reynolds indebted for water rent on that house at the time you cut it off? A. Only from the 1st to the 20th. Q. Now, you cut it off at his request, not because he had not paid the

water rent, didn't you? A. Well, because he had not paid the rent *and had it cut off*. Q. Why did you wait until Mr. Reynolds asked you to cut that water off before you went and cut it off; if the rent was due and unpaid, why didn't you do it prior to his request? A. Because Mr. Reynolds was in there and had the bills changed; and about that time asked me to cut it off while he was in there. I had no right to cut it off until the time to cut it off. Q. Then you didn't cut it off until after he asked you to, did you? A. No, sir, because I had no authority. Q. It was cut out because he asked you to do it, and not for non-payment of rent? A. He asked me to do it because he did not want to pay the rent on it. Q. He asked you to cut it out because he did not want to pay on it? that is the reason you cut it out? A. Yes, sir." On re-direct examination: "Q. And then you cut it out because he did not pay? A. Yes, sir." And the witness continued to swing to and fro on the proposition.

There was no evidence that respondent had any right whatever to turn the water on.

The city collector, a witness for the city, testified, after referring to his books, that the water rent on several houses belonging to respondent had been properly paid but the numbers of the houses nowhere appeared. He knew that Reynolds owned several houses in that vicinity. The account in the book showed that Reynolds had paid him $27.52, but the numbers of only two houses appeared; neither were numbered 730 Vine street. He also stated that it was the business of the chairman of the waterworks committee to order water turned off for non-payment of rent, and that said chairman obtains his information by an examination of the collector's books to see who has not paid, the duplicate receipts being there attached. "Q. Now that book there, does that show any numbers of houses at all? It just shows the gross amount? A. Yes, sir; there are two numbers in there, but it does not show all. Q. I will ask you if on

April 23d Mr. Reynolds didn't pay you the sum of $27.52 water rent? A. If he has my receipt for it, he did; I don't know; I couldn't say. Q. What does that account show he paid you? A. $27.52. Q. And the numbers of the houses are not shown on there, are they? A. No, sir; only on two houses. Q. And he paid on more than two houses? A. Oh, yes."

Jesse Reynolds, the respondent, did not testify.

The receipt issued for the payment of the $27.52 was on a printed form with blank spaces for the insertion of the number of the house, the street on which it was located, the number of rooms in the house, and the amount paid. Among a long list of houses on which respondent paid the water rent, the number and street appear opposite only two, with the number of rooms in each of the houses opposite the amount, and finally the total amount, $27.52.

The information having charged that the water at 730 Vine street was shut off for non-payment of rent, and there being a substantial conflict in the evidence as to whether it was shut off for non-payment of rent or at the request of Mr. Reynolds before an indebtedness accrued, the finding of the trial court that it was not shut off for non-payment of rent as charged in the information will not be disturbed here. [State v. Alexander, 184 Mo. 266, 83 S. W. 753; State v. Coleman, 108 Mo. App. 421, 83 S. W. 1096.]

The declaration asked by appellant was properly refused. In drawing the information the city chose to rely on the ground that the water was turned off for non-payment of rent and so charged, and the case was tried on that theory. Under this information, the trial court would not have been justified in convicting the respondent of proof that the water was turned off "for some other cause" than the non-payment of rent. The allegata and probata must agree.

The judgment of the trial court is affirmed. All concur.