THE STATE v. JULIUS BATES, Appellant.

Division Two, February 6, 1912.

MANSLAUGHTER: Heat of Passion: Self-Defense: Instruction. Defendant was convicted of murder in the second degree for killing deceased with a knife. According to his own testimony, defendant, after being called vile names, was suddenly and violently assaulted, knocked down and was being choked when he drew his weapon and struck the fatal blow. *Held*, that the trial court committed reversible error by refusing to give an instruction on manslaughter in the fourth degree. Defendant's

testimony was evidence of lawful and reasonable provocation sufficient to engender that heat of passion which would reduce the offense to manslaughter. The jury should have been left to say whether that testimony was true, and then, if they found it true, to decide whether such provocation actually engendered such heat of passion and precluded malice. And the fact that self-defense was sought to be shown does not, in this kind of case, render unnecessary such instruction on manslaughter.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. C. Hitchcock,* Judge.

REVERSED AND REMANDED.

*Chas. P. Johnson, Jos. G. Williams* and *I. A. Rollins* for appellant.

Manslaughter in the fourth degree. See R. S. 1909, Sec. 4467. The testimony in this case does not justify an instruction of murder in the first degree, but as the appellant was not convicted of that crime he can not under our decisions complain. The nature of the provocation which reduces the homicide to manslaughter in every case depends upon the circumstances, facts and conditions existing in each particular case; and in speaking of that this court has held that "legal, lawful, adequate and reasonable" when used as adjectives qualifying provocations are synonymous. As a general rule with very few exceptions it takes an assault or personal violence to constitute the provocation that will reduce the homicide to manslaughter. State v. McKinze, 177 Mo. 712. When two men are engaged in a common assault upon each other, and after the assault has been made and during the fight one is killed; the court must instruct the jury on manslaughter in the fourth degree. State v. Herman, 117 Mo. 637; State v. Ellis, 74 Mo. 215; State v. Dickerman, 75 Mo. 570; State v. Sebastian, 215 Mo. 81. The trial court erred in failing to instruct the jury in writing upon questions of law in the case, necessary for

their information in giving their verdict. This duty is made imperative, whether proper instructions are asked by counsel or not. The failure to so instruct in case of felony shall be good cause, when the defendant is found guilty, for setting aside the verdict of the jury and granting a new trial, or warrant a reversal. State v. Moxley, 102 Mo. 374; State v. Palmor, 88 Mo. 568; State v. Banks, 73 Mo. 592; State v. Branstetter, 65 Mo. 149; State v. Mahly, 68 Mo. 315.

*Elliott W. Major,* Attorney-General, and *Charles G. Revelle,* Assistant Attorney-General, for the State.

There is no evidence in this record entitling appellant to an instruction on manslaughter in the fourth degree. It is well settled that the instructions of the court should always be limited to the facts offered in evidence, and should not include features not developed at the trial. The rule that instructions must be predicated upon the facts developed at the trial applies to criminal cases. State v. Hargraves, 188 Mo. 337; State v. Calloway, 154 Mo. 91; State v. Heath, 237 Mo. 235. Courts should not invite the compromise of crime by instructing on degrees not warranted by the evidence. On the part of the State the testimony clearly establishes that, without the slightest provocation, appellant stabbed and killed the deceased. At no time, according to the State's evidence, did deceased make any hostile demonstrations or attempt to assault appellant. He merely refused to comply with appellant's command to leave the rear platform and enter the car. The words uttered by him on this occasion certainly furnish no basis for a provocation sufficient to reduce the killing to manslaughter. The rule is well settled that: ''Neither words of reproach, how grievous soever, nor indecent, provoking actions or gestures, however much calculated to excite indignation or arouse the passions, are sufficient to free

the party killing from the guilt of murder. To have the effect of reducing the guilt to manslaughter, the provocation must 'consist of personal violence,' or otherwise expressed, there must be an assault upon the person and direct and actual battery." State v. Gartrell, 171 Mo. 516; State v. Sharp, 233 Mo. 269. The only evidence offered in behalf of the defense, except character evidence, was that of appellant, and, in detailing the facts, he gave not the slightest intimation that he was actuated by any impulse save that of self-defense. In all this record there is not a syllable of testimony tending to show that he killed deceased while under a heat of passion aroused by a sudden and lawful provocation. If the jury believed the evidence on the part of the State, appellant was clearly guilty of murder in either the first or second degree. If, on the contrary, they believed the evidence on the part of appellant, he was not guilty of any offense, but was justified in the killing. We respectfully submit that there is no testimony in this case warranting an instruction on fourth degree manslaughter. State v. Gartrell, 171 Mo. 489; State v. Meadows, 156 Mo. 110; State v. Lewis, 118 Mo. 82; State v. Ramsey, 82 Mo. 137; State v. Dunn, 80 Mo. 690; State v. McCollum, 119 Mo. 495.

BLAIR, C.—Having been convicted in the circuit court of the city of St. Louis of murder in the second degree and sentenced to the penitentiary for a term of ten years, defendant has appealed.

Defendant and deceased, Joseph Driskell, were entire strangers and the killing occurred upon a crowded street car upon which both were passengers. Deceased was standing upon the rear platform of the car when defendant boarded it and took his position at the door and in front of deceased, who was in front of and leaning against the first of two rails running across the platform dividing it into three

sections. The defendant and deceased were very near each other and the sudden jerking of the car as it started up caused defendant to ''brush'' or ''bump'' against deceased, and out of this trivial incident grew the tragedy.

The evidence offered by the prosecution was fully sufficient to support the verdict returned, though the State's witnesses did not agree in some important particulars.

The testimony of the witness who seems to have occupied the best position to see what happened and hear what was said was to the effect that defendant was holding to the handle on the car door and (doubtless after the motion of the car had thrown the two against each other) said to deceased: ''Why don't you go inside?'' Deceased replied: ''I don't have to go inside; I have been standing here all this while, you get inside.'' Deceased then added: ''Don't lean or rub against me.'' Defendant then started to turn facing deceased and, opening his knife, said to him: ''Don't talk that way to me.'' As defendant turned Driskell ''grabbed at him,'' the two men clinched, and defendant went down backward into the car, deceased on top of him. A bystander seized defendant's right arm and the witness lifted deceased to his feet.

Other witnesses gave somewhat different versions of the affair, one declaring that defendant stabbed deceased as he turned facing him and that deceased was not down at any time. Another, that he, the witness, seized defendant from behind and threw him backward to the car floor and that deceased was bending over the defendant as the latter lay upon his back. It appeared that two of deceased's companions took defendant's knife from him, one holding his right arm and the other placing his foot upon his neck and face and jerking the knife out of his hand, thereby cutting defendant's fingers slightly.

Deceased died from the effects of a knife wound which pierced the left ventricle of the heart. Another slight wound was found upon the head back of the left ear. Despite his wounds, the testimony is that deceased stood in his former position leaning against the rail, while the car ran two blocks, and then, with some assistance, walked from the car to the sidewalk, where he sat down and died.

On the part of the defense, there was evidence that defendant's reputation for peace, quiet, sobriety and industry was good.

It appeared from the testimony of the policeman who arrested him, that defendant's lips were bruised and bleeding and his fingers had been cut.

Defendant testified that when the car jerked and caused him to brush against deceased, the latter asked him "what in the hell was the matter with him," and when he tried to explain and asked deceased to excuse him, deceased said: "Like hell I will excuse you; you damn black son-of-a-bitch, stand up there." At this juncture, the conductor came back for defendant's fare and passed on. Deceased then said: "Get off this car and I will fix you." Defendant replied that he had paid his fare, and "didn't have no right to get off the car," whereupon deceased called defendant a vile name and struck him in the mouth with his fist and immediately a man seized him (defendant) from behind and jerked him down in the car, deceased leaping upon him and commencing to choke him with both hands. Defendant's testimony is further to the effect that not until he was down and deceased upon him, choking him, did he draw his knife; that he then got his knife out of his pocket; that he had to do something because deceased "was killing him;" that having taken out his knife he "made a blow somehow;" that someone seized his right hand and another put his foot upon his neck, and seizing the knife, jerked it away, thereby cutting his fingers. He further testi

fied that when he got to his feet he "didn't have no forethought, because he was crowded on and scared to death."

I. Defendant's counsel requested and the trial court refused to give an instruction on manslaughter in the fourth degree, and as a consequence this judgment must be reversed and the cause remanded for retrial.

The testimony of the defendant discloses a typical case of manslaughter as that offense is defined in the text-books and reports. Why the instruction requested was refused it is difficult to understand. The trial court should not have thus, by implication, excluded from the consideration of the jury any part of the defendant's testimony.

According to that testimony, defendant, after being called vile names, was suddenly and violently assaulted, knocked down and was being choked when he drew his weapon and struck the fatal blow.

That this was evidence of lawful and reasonable provocation sufficient to engender that heat of passion which reduces the offense of slaying another to manslaughter in the fourth degree is too apparent to require discussion or the citation of authority.

The defendant's testimony tending to show that the killing was manslaughter, it was the duty of the trial court to submit that question by proper instructions and leave it to the jury to say whether that testimony was true.

If courts can, without error, refuse to instruct juries upon one phase of a defendant's testimony, they can refuse to instruct upon any and all phases of it and thus, in effect, practically nullify the statute authorizing defendants in criminal cases to testify.

It is suggested that this record presents a case in which there were no issues save murder and self-de-

fense, because defendant declared that at the time he stabbed deceased the latter "was killing him," and he was "dying as fast as he could."

The "fact that self-defense was sought to be shown does not render unnecessary an instruction authorizing a conviction, for manslaughter" (Wharton on Homicide, sec. 165; State v. McKinzie, 102 Mo. l. c. 632; State v. Matthews, 148 Mo. l. c. 197; State v. Barnett and Baker, 203 Mo. l. c. 661-662) in a case of the kind now before us.

That a case might arise in which the defendant's testimony and the facts and circumstances might so clearly disclose the absence of heat of passion as to render an instruction on manslaughter in the fourth degree unnecessary, need be neither denied nor affirmed. This is no such case.

There was evidence of lawful and reasonable provocation. Whether that evidence was true was a question for the jury. If the jury found that evidence true, it was for them to decide whether such provocation actually engendered that heat of passion necessary to reduce the degree of the crime from murder to manslaughter. [State v. Jones, 20 Mo. l. c. 64; State v. Woods, 97 Mo. l. c. 35; Mundine v. State, 37 Tex. Cr. Rep. l. c. 15; People v. Holmes, 111 Mich. l. c. 371; Roberson v. State, 43 Fla. l. c. 170; Bolzer v. People, 129 Ill. l. c. 120; Wharton on Homicide (3 Ed.), sec. 203; 2 Bishop's New Cr. Law (8 Ed.), sec. 716; 1 McClain's Cr. Law, secs. 342, 345.]

In order to convict defendant of murder in either degree, it was necessary for the State to prove beyond a reasonable doubt that in stabbing deceased defendant was actuated by malice. Evidence of provocation of the kind indicated by defendant's testimony tended directly to rebut the presumption that the killing was maliciously done and the instruction on manslaughter should have been given in order that the jury might, under its guidance, have determined whether the

killing was murder or manslaughter, i. e., was done with or without malice.

Discussing an analogous question, the Supreme Court of the United States, in Stevenson v. United States, 162 U. S. l. c. 320, said:

"The jury should have been permitted to determine the credibility of the evidence, as above detailed, and, if true, whether the effect of the conduct of the deceased, in shooting, as he did, into the saloon, and considering all the circumstances of the case, was such as naturally tended to and did excite in the mind of the plaintiff in error a sudden passion, either of rage or fear, and under the influence of which he fired the shot and killed the deceased wilfully and unlawfully, but at the same time without malice. If he thus fired the pistol, would not a jury have the right to say that the consequent killing was manslaughter instead of murder? Is it not clearly a question of fact for a jury to determine just what the mental condition of plaintiff in error was in regard to malice? . . . The ruling of the trial judge [refusing to instruct on manslaughter] in effect was to say that as a matter of law there was nothing in all this evidence, if true, which would permit the jury to find that the plaintiff in error when he fired his rifle was so much under the influence of sudden passion, caused by these circumstances and by this assault upon him, as not to have been actuated by that malice which the law defines as a necessary ingredient in the crime of murder. Is it perfectly plain and clear, *as a conclusion of law*, that shooting at another under circumstances such as were detailed . . . in this case can have no tendency to raise within the mind of the person thus assaulted such a sudden passion of anger or terror as to deprive his subsequent act of that malice which is necessary to make it murder? If it is not to be so asserted as a matter of law, then it becomes a question of fact in such case, and that question must be answered by the jury.

Whether the witnesses told the truth in regard to such circumstances is not for the court to say, nor is it for the court to decide upon the weight to be given to them if proper for the consideration of the jury.''

In that case the same argument was made as in this, that the evidence was pertinent solely to the defense of self-defense and "raised no issue as to the grade of the crime if the theory of self-defense were not sustained.''

Responding to this, the court said:

"We do not see the force of the objection. The fact that the evidence might raise an issue as to whether any crime at all was committed is not in the least inconsistent with a claim that it also raised an issue as to whether or not the plaintiff in error was guilty of manslaughter instead of murder. . . . The jury might reject the theory of self-defense, as they might say the shot from the pistol of the deceased had already been fired and the plaintiff in error had not been harmed, and, therefore, firing back was unnecessary and was not an act of self-defense. But why should the other issue be taken from the jury and they not be permitted to pass upon it as upon a question of fact?''

In that case the judgment was reversed solely by reason of the trial court's failure to give the requested instruction on manslaughter.

In some cases cited in the briefs (State v. McCollum, 119 Mo. l. c. 475, 476; State v. Dunn, 80 Mo. l. c. 693; State v. Ramsey, 82 Mo. l. c. 138; State v. Lewis, 118 Mo. l. c. 83; State v. Meadows, 156 Mo. l. c. 116; State v. Gartrell, 171 Mo. l. c. 522) it was held that there was no evidence of provocation sufficient to engender passion reducing the degree of the crime to manslaughter, but in no case has it been so held in which the evidence resembled that in the case at bar.

In the case of State v. Gartrell, supra, something was said concerning defendant's failure to indicate

in his testimony that he was laboring under heat of passion. The court clearly did not intend this remark to be given great importance since it held that the evidence justified an instruction for murder in the second degree, and since the character of the heat of passion necessary to reduce the grade of such a crime from murder in the first to murder in the second degree is like that necessary to reduce it to manslaughter, the difference lying in the character of the provocation which engenders the passion and not in the passion engendered.

Further, the facts in the Gartrell case are wholly different in character from the facts in this.

It may be added that we do not intend to be understood as intimating that the instruction on self-defense could have been omitted by the court.

II. · In view of the result indicated in the preceding paragraph, it is obviously unnecessary to consider the question whether a new trial should have been granted on the ground of newly discovered evidence.

For the reasons given, the judgment is reversed and the cause remanded. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur.