THE STATE v. WILLIAM WRIGHT, *alias* JOHN GAUESS, Appellant.— 85 S. W. (2d) 7.

Division Two, July 11, 1935.

*Chas. B. Jones* for appellant.

*Roy McKittrick,* Attorney General, and *Frank W. Hayes,* Assist-
ant Attorney General, for respondent.

TIPTON, P. J.—The appellant, a negro, was convicted of murder in the first degree in the Circuit Court of Jackson County, Missouri, at the March Term, 1933, and his punishment assessed at death. He was charged in the information with the murder of Dr. J. T. Mc-Campbell, a negro druggist, in his store located at the corner of Vine and Howard streets, in Kansas City, on March 15, 1933.

I. The appellant contends that the evidence is insufficient to sustain the verdict. The evidence on behalf of the State shows that on March 15, 1933, about five P. M., the appellant entered the drug store owned and operated by the deceased. At that time the deceased was engaged in a conversation with Dr. Hayden. The only other person in the store was Jerry Evans, who used the drug store as headquarters for his transfer business. When the appellant inquired for Dr. McCampbell, he came to the front part of the store, but refused to sell the appellant cigarettes for a dime. The deceased returned to the rear of the store and finished his conversation with Dr. Hayden, who then left the store. The deceased then went behind the cigar counter and there the appellant pointed his gun at the deceased and Evans, and said: "Hands up, this is a holdup," and ordered the two men to the rear of the store where the safe was located. The deceased was directed to open the safe and while in the act of opening it, two boys, Sandy White and Julius Richardson came into the store. The appellant pointed his gun at the boys and told them to put up their hands, at this time the deceased ran to the cash register and obtained his gun. The appellant shot at him several times and he returned the fire. The appellant was not injured but Dr. McCampbell was shot twice and died in about thirty minutes. After Dr. McCampbell was shot he ceased firing and the appellant took the gun belonging to the deceased and a small amount of change from the cash register and run out into the street. The appellant admitted these facts, but claimed it was a fake holdup to collect robbery insurance. His testimony will be more fully developed later in connection with the discussion of the action of the trial court refusing to give an instruction on second degree murder.

Section 3982, Revised Statutes 1929, declares every murder committed in the perpetration of or an attempt to perpetrate a robbery or any willful, deliberate and premeditated killing to be murder in the first degree. Viewed in the light most favorable to the State, the evidence clearly shows that the deceased was killed by the ap-

pellant while the appellant was in the act of committing robbery. The evidence is sufficient to sustain a verdict of first degree murder as the killing was done in the perpetration of a robbery. [State v. Nasello, 325 Mo. 442, 30 S. W. (2d) 750; State v. Hershon, 329 Mo. 469, 45 S. W. (2d) 60; State v. White, 330 Mo. 737, 51 S. W. (2d) 109.]

We also hold that the evidence is sufficient to show that Dr. McCampbell was deliberately and premeditatedly murdered. We think the facts and circumstances show that the appellant had planned to murder any person who might attempt to thwart his plan to rob or who might attempt to prevent him from escaping with his illegally obtained loot. The State's evidence shows that the appellant shot the deceased at the first sign of any resistance of the robbery. In the cases of State v. Lewis, 201 S. W. 80, 273 Mo. 518, and State v. Nasello, supra, we held under similar facts that the evidence was sufficient to show deliberation and premeditation so as to sustain a conviction of murder in the first degree. In the case at bar, this was the theory of the instruction given on behalf of the State that authorized the jury to find the appellant guilty of murder in the first degree. We rule this point against the appellant.

II. Appellant's main contention is that under his evidence the court erred in refusing his request for an instruction on second degree murder.

The appellant testified that about noon on March 15, 1933, he met a young negro whom he had known only by the name of Bobbie who was with another negro boy unknown to the appellant. Bobbie told the appellant that Dr. McCampbell owned a drug store located at Howard and Vine streets; that he had been robbed several times and had taken out robbery insurance and wanted some one to execute a fake holdup so that he could recoup his former losses; that because of the bank moratorium he had quite a sum of money in his safe, at least two hundred dollars. The druggist, according to Bobbie, had agreed with him that he would cause no trouble and would be unable to identify whoever participated in the holdup. This testimony was not objected to on the ground that it was hearsay.

About 5:15 or 5:30 that afternoon the appellant went into the store and asked for Dr. McCampbell. He was told by Evans, the transfer man, that Dr. McCampbell was in the back of the store. In this way he learned that the man to whom he was talking was not the doctor.

He bought some tobacco and read the newspaper, waiting for Evans to leave, as he did not do so he proceeded with his plans. He pointed a gun at the two men and ordered the doctor to open the

safe. Prior to this he looked across the street, saw the two boys and thought they would come into the store as they had planned. He ordered the doctor and transfer man to the rear of the store behind the prescription partition. As the doctor was opening the safe someone entered the front door. The appellant thought it was his companions but it was the delivery boy, Richardson, and a customer, Sandy White. When the appellant saw who it was he became confused as to what to do next. He told them to go back with the others. Just as he gave that order the doctor rushed across the room behind the partition and obtained a pistol. The appellant saw him get it but made no attempt to shoot him.

As the doctor reached the opposite side of the room he opened fire. Appellant tried to tell the doctor why he was there as he knew something was wrong and that the doctor had not been notified when the fake robbery was to be executed. The doctor was behind the partition and would lean out and fire and jump back. The appellant, at no time, fired directly at the doctor, always firing through the partition.

At this time Evans was standing by the safe. As soon as the firing ceased, the appellant walked towards Dr. McCampbell, who went behind the counter, with no outward appearance of being injured. He laid his gun on the counter in front of him. The appellant made no attempt to fire further and walked over and took the gun. By that time quite a crowd had gathered in front of the store and many people were peering through the glass front. The appellant realized then that the plans, which he had been informed were carefully laid, had not developed as he expected and that he should get away until he could contact the doctor and explain his actions. As he passed the cash register he took some change. This was used for taxi fare to escape from the scene. His only thought was escape, so he ran from the store. He did not learn that the doctor was killed until some time later.

The reasonable inference to be drawn from the appellant's testimony is that the appellant did not intend to kill the deceased, but he shot towards him so he could make his escape and he did not intend to hit the deceased because he only shot at the partition that was in front of deceased; that he did not shoot at Dr. McCampbell when he was out in the open although he had an opportunity to do so.

We think that under the appellant's evidence he did not deliberately and premeditatedly kill the deceased. This was the theory under the State's recovery instruction.

In the case of State v. Sharpe, 326 Mo. 1063, l. c. 1070, 34 S. W. (2d) 75, l. c. 78, we said:

"Murder in the first degree, defined in Section 3230, Revised Stat-

utes 1919, as distinguished from murder in the second degree is the *deliberate* and premeditated killing, or homicide in the perpetration of, or attempt to perpetrate, any arson, rape, robbery, burglary, or mayhem. The lawmakers evidently intended to classify crimes of violence as distinguished from stealthy crimes like larceny, and to provide that homicide as an incident to the commission or the attempt to commit such a crime was murder in the first degree, although deliberation was not proved. The commission of or attempt to commit such a crime *is not* deliberation but takes the place of deliberation so as to make the incidental homicide murder in the first degree. [State v. Hayes (Mo.), 262 S. W. 1034, 1. c. 1037, and cases cited; State v. Robinett, 312 Mo. 635, 279 S. W. 696, 1. c. 700.]

"Thus if the defendant were committing or attempting to commit larceny, or attempting to escape with his booty after the commission of larceny, it would not be murder in the first degree unless the element of deliberation is shown. This distinction is not one of construction, but is the plain letter of the statute. It would be only murder in the second degree."

In the case of State v. Lindsey, 333 Mo. 139, 62 S. W. (2d) 420, 1. c. 424, we said:

"At common law there were no degrees of murder. If a person committed a homicide in the perpetration of an offense, he was guilty of murder in case the offense was a felony and of manslaughter if the offense was a misdemeanor. [Wharton on Homicide (3 Ed.), pp. 147, 174, 178 et seq.; State v. Robinett, 279 S. W. 696.] These rules of the common law have been modified by our statutes defining degrees of murder. Section 3982, Missouri Statutes Annotated 1929, provides that: 'every murder which shall be committed by means of poison, or by lying in wait, or by any kind of willful, deliberate and premeditated killing, and every homicide which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or mayhem, shall be deemed murder in the first degree.' Section 3983, Missouri Statutes Annotated 1929, defines 'murder in the second degree' in these terms: 'All other kinds of murder at common law, not herein declared to be manslaughter or justifiable or excusable homicide, shall be deemed murder in the second degree.'

"It is a felony for a prisoner to break jail after conviction for a criminal offense (Sec. 3615, Mo. Stat. Ann., 1929) or before conviction for violation of any penal statute (Sec. 3916, Mo. Stat. Ann. 1929). It does not appear from the record whether appellant Lindsey or Brown at the time of their escape from the Boone County jail, were prisoners before conviction or after conviction. In either case the offense was a felony but not one of the felonies mentioned in the statute defining murder in the first degree (Sec. 3982). If

therefore the degree of murder for which appellant was liable for trial should have been determined by the fact that he was engaged or was about to engage, at the time of the assault upon Cook, in the commission of the felony or jail breaking, then under Section 3982, the jury should have been instructed only on murder in the second degree. But if there be present in this or any like case, facts and circumstances apart from those of the other crimes, tending to prove that a murder was committed 'by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing,' which is the primary definition of murder in the first degree given in the statute (Sec. 3982), then the issue of murder in the first degree should be submitted to the jury, regardless of the issue whether the accused at the time was also engaged in the perpetration of any of the felonies mentioned in Section 3982, or of any of the other felonies contemplated by Section 3983, or even of a misdemeanor.''

In the case of State v. Robinett, 279 S. W. 696, l. c. 700, we said:

''From the authorities quoted we get these distinctions: Where parties are engaged in the commission of one of the felonies enumerated in Section 3230, if a homicide accompanies and is incidental to the enterprise, whether intended or not, it is murder in the first degree; if the intention is to commit some felony other than one of those enumerated in that section, such homicide, although unintentional, is murder in the second degree under Section 3231, and if the unlawful act, which they are in the act of perpetrating, is a misdemeanor, and the homicide is incidental and not intentional, the offense would be manslaughter.''

If the appellant's evidence is to be believed, then he was not in the commission of a robbery at the time the deceased was killed. ''It is essential to the commission of the crime of robbery that the taking should be without the consent of the victim.'' [54 C. J. 1025, sec. 45. State v. Alexander, 83 S. W. 753, 184 Mo. 266.] If the robbery were a fake so that Dr. McCampbell could collect on an insurance policy, then the taking would be with his consent, and the crime would not be robbery. Under the appellant's testimony, he and the deceased were in a conspiracy to defraud the insurance company and would be guilty of a felony either under Section 4095 or under Section 4304, Revised Statutes 1929. The appellant testified that there was at least two hundred dollars in the safe. So, if the killing were incidental to the commission of the crime of defrauding the insurance company that carried a policy of insurance against Dr. McCampbell being robbed, then the appellant would be guilty of murder in the second degree.

The appellant's testimony tended to show that the killing was murder in the second degree, it was the duty of the trial court to

448

submit that by proper instruction and leave it to the jury to say whether the testimony was true. [State v. Bates, 239 Mo. 507, 144 S. W. 99; State v. Turner, 246 Mo. 598, 152 S. W. 313.]

The disposition of this case renders unnecessary to discuss the last assignment of error concerning the improper paneling of the jury.

From what we have said it follows that the judgment of the trial court should be reversed and remanded for a new trial for the failure of the trial court to instruct on second degree murder. It is so ordered.

All concur.