UNITED STATES of America,
Appellee,

v.

Thomas W. PHILLIPS, Appellant.

No. 19975.

United States Court of Appeals,
Eighth Circuit.

Sept. 21, 1970.

Richard Marx, St. Louis, Mo., for appellant, and filed brief.

Richard M. Minkoff, Atty., Dept. of Justice, St. Louis, Mo., for appellee, and filed brief, Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., on the brief.

Before VAN OOSTERHOUT, Circuit Judge, JOHNSEN, Senior Circuit Judge, and HEANEY, Circuit Judge.

JOHNSEN, Senior Circuit Judge.

Appellant Thomas W. Phillips was convicted on a jury trial and sentenced to two years imprisonment for violation of 18 U.S.C. § 922(g), which, as here pertinent, makes it "unlawful for any person * * * who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year * * * to transport any firearm * * * in interstate * * * commerce".

The prior conviction alleged against appellant was for the offense under 18 U.S.C. § 500 of forging postal money orders. The unlawful transportation charged was the carrying of a .25 caliber Junior Colt pistol from Indianapolis, Indiana, to St. Louis, Missouri. Appellant was arrested, with the gun on his person, at the St. Louis Municipal Airport after he had deplaned from a nonstop flight between the two cities.

Four contentions are urged for reversal: (1) that § 922(g) is unconstitutional as violating the Fifth Amendment's privilege against self-incrimination; (2) that such subsection is further unconstitutional as violating the Fifth Amendment's guarantee against double jeopardy as to appellant's alleged forgery offense; (3) that additionally the Sixth Amendment's right to confrontation was violated by the restrictions imposed upon appellant's cross-examination of a witness named Bell; and (4) that beyond these constitutional defects, his conviction was also violative of due process, in that the evidence was insufficient to entitle the jury to return a verdict of guilty against him.

We find all of these constitutional claims to be unsubstantial, and we affirm the conviction.

The argument on the first contention is that the receiving of any evidence against a defendant as to a prior felony conviction puts the stamp of bad character upon him in relation to the question of his guilt on a firearm charge; and that the statutory subsection thus imposes "an unconstitutional burden upon a defendant to testify, to explain the conviction, and to waive his right to remain silent".

A variety of constitutional assaults has heretofore been made upon 15 U.S.C. § 902(e), the predecessor of 18 U.S.C. § 922(g), and upon 18 U.S.C.App. § 1202(a) (1), a counterpart to § 902(e). On the period and range covered by these attacks, and with the lack of any doubt by any court in relation to them as to the general validity of such a legislative control as is involved in § 922(g), we should have supposed that the constitutionality of § 922(g) would by this time be regarded as having become fully and acceptedly settled.

Among the judicial utterances which have thus been made, there may be noted representatively the expressions in Cases v. United States, 131 F.2d 916, 919 (1 Cir.1942); United States v. Lauchli, 371 F.2d 303, 314 (7 Cir.1966); United States v. DePugh, 266 F.Supp.

453, 455 (D.C.W.D.Mo.1967), aff'd De-Pugh v. United States, 393 F.2d 367 (8 Cir.1968), cert. den. 393 U.S. 832, 89 S. Ct. 101, 21 L.Ed.2d 102; and United States v. Wiley, 309 F.Supp. 141 (D.C. Minn.1970).

But if the solid judicial view which has heretofore obtained as to the absolute right of Congress to prohibit the transportation in interstate commerce of firearms by convicted felons can be argued not to carry a sufficient implicational sweep against the form in which appellant's contention has here been cast, a brief additional expression should suffice to dispose of this attempted variant in constitutional veil as to the subsection.

 First, it should be noted that the production of a public record of prior conviction against a defendant, to establish his status as member of a class to which the interstate transportation of firearms has been prohibited, clearly does not constitute any furnishing of evidence by such a defendant to the Government. And parenthetically, even in respect to the facial premise of appellant's argument, it might be observed that it would be difficult to see how any explanation that could have competency would be able to be made by such a defendant of his prior conviction. But if conceivably some element of explanation could competently be open to him, his election to take the witness stand for this purpose as against remaining silent is no different in its dilemma than the choice which he is required to face in respect to any other evidence produced against him at his trial.

 However incriminating a defendant's taking of the witness stand to deny or diminish the force of evidence against him may turn out to be, his absolute right to have remained silent without any implication against him therefrom, leaves whatever testimony may so occur from him as not constituting compelled self-incrimination. As the Court said in Williams v. Florida, 399

U.S. 78, 83–84, 90 S.Ct. 1893, 1897, 26 L.Ed.2d 446 (1970):

"The defendant in a criminal trial is frequently forced to testify himself and to call other witnesses in an effort to reduce the risk of conviction * * *. That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination".

 On appellant's second contention—that of double jeopardy—the argument made is that, since one who has not previously been convicted of a felony may transport a gun in interstate commerce, the effect of convicting a prior felon therefor "is really to convict him twice for the previous crime". The fallacy of this is, we think, sufficiently manifest from our previous decisions. Thus, we have held that one cannot be said to be tried twice for the same offense, within a claim of double jeopardy, where each of the charges made against him "requires proof of an additional fact which the other does not". Harris v. United States, 237 F.2d 274, 276 (8 Cir.1956), quoting Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 182, 76 L.Ed. 306. Also, we have made it clear that the use of a prior conviction as the basis for a status in respect to the commission of another crime does not constitute double jeopardy—as, for instance, in the increase of punishment under a habitual offender statute. Davis v. Bennett, 400 F.2d 279, 282 (8 Cir. 1968). And beyond this, none of the acts involved in appellant's postal money order conviction were in any way here probative elements or ingredients in his transportation offense. The prior conviction was permitted to be proved only, as has been noted, for the purpose of establishing appellant's status as member of a class to which the use of interstate commerce to transport firearms has been forbidden. It was not probatively possible, nor was it legally open under the court's instructions, for the jury to attempt to deal with the previous convic-

tion on any other basis or in any other significance.

■ As to appellant's third contention, we are also satisfied that there cannot be said to have been any such curtailment of appellant's cross-examination of the witness Bell as to have the height of constitutional violation of the right to confrontation or as even to approach the level of error in abuse of trial discretion.

Bell's testimony did not relate to an element necessary to the crime or provide a link essential for appellant's conviction. In whatever direct materiality it could have, it consisted merely (a) of an identification of the gun which appellant was charged with transporting as being one which he had given to a Mrs. Williams in Indianapolis a few months before the offense, and (b) of an identification of appellant as having been present in Mrs. Williams' home, with a gun in his hand, two nights prior to the offense, on the return of Bell and Mrs. Williams to the house after having gone out for dinner.

In collateral or incidental relevance, his testimony showed that he was a deputy sheriff of a county in Missouri, but that his business occupation was that of head of a printing and publishing establishment in the county; that, though he was a married man with a family, Mrs. Williams had been his "paramour" in Indianapolis for some four years; that he had throughout this period made trips to Indianapolis to see her and had given her large sums of money; that he had bought the house for her in Indianapolis where she lived; and that his reason for providing her with the gun involved was as a protection to her because of the isolated area in which the house was located.

On these frank, sordid admissions, and their natural implications of what the relationship between Bell and Mrs. Williams had been, we do not believe that any analytical demonstration is required as to the lack of substance for re-

versal in the trial court's sustaining of objection to appellant's attempt to interrogate Bell (1) on what he meant by the word "paramour"; (2) on whether he intended to marry Mrs. Williams; and (3) on what his pay as a deputy sheriff had been. We shall merely comment that we think the court properly observed as to the term "paramour" that "I think everybody understands it"; that it has a "commonly accepted sense"; and that there thus was no need "to engage in semantics with this witness over the meaning of the word". As to the other two elements sought to be explored, neither one could in our opinion have much, if any, relevance, but in any event they could hardly be regarded as adding any significant weapons for attack upon Bell's credibility in the broad field for argument which was open to appellant on Bell's other testimony.

■ Appellant's final contention as to the insufficiency of the evidence to sustain his conviction is, on our reading of the record, so clearly without merit as not to warrant an extension of this opinion in a detailing of it. The case went to the jury on the Government's evidence. No testimony was offered by appellant. The testimony of Mrs. Williams, who was the Government's principal witness, showed that she and appellant had made the trip together to St. Louis; that appellant had had her purchase the tickets that morning at the Indianapolis airport and give assumed passenger names; that they had gone to the airport from her home, with appellant having possession in her bedroom of the gun involved prior to their leaving; and that the gun had not been taken from the house nor brought onto the plane by her. As mentioned earlier, appellant was found by the F.B.I. agents to have the gun on his person after he had deplaned at the St. Louis airport. Thus the question of appellant's transportation of the gun could not possibly be more than a matter for the jury, and the fact thereof became settled against him

by the jury's verdict. So equally, do the other questions argued by appellant have sufficient basis in the evidence to give them finality from the jury's determination.[1]

Affirmed.

1. The object of Phillips' and Mrs. Williams' trip to St. Louis, and of Phillips' carrying of the gun, was in no way gone into or suggested by the Government's evidence. The Government scrupulously avoided any reference to or intimation on this aspect, because it had been made the subject of a separate indictment against Phillips and Mrs. Williams, as shown by our records in another appeal by Phillips, charging them with traveling in interstate commerce to commit extortion in the sum of $25,000 against Bell, in violation of 18 U.S.C. § 1952, and with having conspired to engage in the extortion.