**STATE of Missouri, Respondent,**

v.

**Freddy CHAMBERS, Appellant.**

**No. 58407.**

Supreme Court of Missouri,
En Banc.

July 14, 1975.

John C. Danforth, Atty. Gen., Dan Summers, Asst. Atty. Gen., Jefferson City, for respondent.

Kenneth W. Haile, Nolen W. Berry, Neosho, for appellant.

HIGGINS, Commissioner.

Freddy Chambers was convicted by a jury of one count of stealing and four counts of murder, second degree. The jury was unable to agree on his punishment and the court fixed the punishment at ten years' imprisonment for the stealing and at twenty-five years' imprisonment on each count of murder with the terms to run consecutively. Sentence and judgment were rendered accordingly. §§ 560.156, 560.161.2(2), 559.020, 559.030, RSMo 1969, V.A.M.S.; Rules 24.04, 27.03, V.A.M.R.

Appellant does not question the sufficiency of evidence to sustain his convictions, and a jury reasonably could find that: On September 4, 1973, defendant and Ray Collins were together from about 9:00 p. m. until sometime after 1:00 a. m., September 5, 1973. They had been drinking, and defendant announced his intention "to go get a pickup at Hi Dollar Joe Burtrum's" at 4800 Range Line south of Joplin in Newton County, Missouri. When they arrived at Burtrum Brothers Motor Company, defendant "busted a window out of the pickup, hooked a chain onto it" and "started pulling the pickup down the road

\* \* \* real fast and all over the road." Collins was in the pickup to steer it and defendant was towing the pickup with his Ford Torino. During the asportation, the pickup collided with an oncoming automobile. Defendant and Collins were observed in the theft of the pickup truck, a 1969, ½-ton, 6-cylinder Chevrolet equipped with a camper body, by Joe Burtrum. He heard the sound of glass breaking, after which he observed the Ford Torino pulling the pickup camper north on Range Line (U.S. Highway 71). It was dark; there were no lights on either of the vehicles; and, as they proceeded down Range Line, "they were accelerating rather rapidly, weaving from side to side of the road." They crossed the center line several times. He tried unsuccessfully to stop the thieves by firing two or three shots from his pistol. He followed in a car, heard a crash, and saw that the pickup truck had crossed into the southbound lane and hit a Valiant automobile head on about a quarter of a mile from the car lot at 44th and Range Line. There were four persons in the Valiant, all of whom died in or as a result of the collision.

The collision occurred around 1:00 a. m., September 5, 1973.

Among others, the court gave Instruction No. 9A:

"The Court instructs the jury that under the laws of this State where a homicide shall be committed while perpetrating the theft of a motor vehicle it is deemed Murder in the Second Degree.

"In this case, if the Jury find and believe from the evidence beyond a reasonable doubt that a homicide occurred while the defendant was stealing a motor vehicle in the County of Newton, State of Missouri, then the perpetration of such theft stands in lieu of premeditation as hereinbefore defined, and the Jury will be warranted in finding the defendant guilty of Murder in the Second Degree and should so say in your verdict."

Instruction No. 10:

"The Court instructs the Jury that if you find and believe from the evidence beyond a reasonable doubt that a homicide did not occur while the defendant was stealing a motor vehicle in the County of Newton, State of Missouri, the Jury cannot find the defendant guilty of Murder in the Second Degree and should so say in your verdict."

Instruction No. 13 submitted the stealing count, and Instructions Nos. 14, 15, 16, and 17, in conventional form and predicated on Instructions Nos. 9A and 10, submitted the four counts of murder, second degree, resulting from the assault of the pickup truck on each of the four occupants in the Valiant.

Appellant charges the court erred (I) in submitting the stealing count and the four counts of murder, second degree. His theory is that "the underlying felony of stealing, being an essential part of felony-murder, merged into the murder counts, they being the greater charge. A conviction on one felony would exclude a conviction on the other felony. To be tried and convicted for both felonies [the stealing and murder, second degree] is in violation of the doctrine of double jeopardy."

The question is whether the general rule that a defendant may not be twice tried for the same offense, State v. Toombs, 326 Mo. 981, 34 S.W.2d 61 (1930), applies in this case where defendant was charged and convicted under the felony-murder rule of felonious stealing and four murders in the second degree committed during the perpetration of the theft.

██ There are several propositions bearing on the resolution of this question. Although the state cannot split a single crime and prosecute it in parts, e. g., a conviction for procuring execution of a false stock certificate is a bar to subsequent prosecutions for procuring execution of other certificates, where all were signed and issued in a single transaction at a sin-

gle request and with a single intent, State v. Toombs, supra; nevertheless, a person may by one act violate more than one statute or commit more than one offense, State v. Moore, 326 Mo. 1199, 33 S.W.2d 905 (1930). The test whether the offenses charged are one and the same has been expressed to be whether each offense necessitates proof of an essential fact or element not required by the other. United States v. Phillips, 432 F.2d 973 (8th Cir. 1970); Cardarella v. United States, 375 F.2d 222 (8th Cir. 1967), certiorari denied, 389 U.S. 882, 88 S.Ct. 129, 19 L.Ed.2d 176 (1967). It is immaterial that the same evidence is utilized to prove each offense if each requires proof of an essential fact or element not required to support a conviction on the other. United States v. Johnson, 284 F. Supp. 273 (W.D.Mo.1968), affirmed, 410 F.2d 38 (8th Cir. 1969), certiorari denied, 396 U.S. 822, 90 S.Ct. 63, 24 L.Ed.2d 72 (1969); Cardarella v. United States, supra; State v. Moton, 476 S.W.2d 785 (Mo.1972). As observed in State v. Toombs, supra, 34 S.W.2d l. c. 64, offenses are not identical "where an essential element of the offense denounced by one statute is not an essential element of the offense defined in the other * * *." See also Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

The question is now restated, whether, in the circumstances of this case, the stealing charge is an essential element of, or lesser included offense within, the felony-murders as to bring the case within the prohibition of State v. Toombs, supra.

 The felony-murder rule permits the felonious intent necessary to a murder conviction to be shown by the perpetration of or attempt to perpetrate a felony. Proof of intent to commit the underlying felony raises a conclusive presumption that the defendant possessed the necessary felonious intent to support conviction for the resulting murder, i. e., intentional, willful, and premeditated, with malice aforethought, if felony-murder, second degree, is charged, or these plus deliberation if felony-murder, first degree, is charged. State v. Jenkins, 494 S.W.2d 14 (Mo.1973); State v. Jasper, 486 S.W.2d 268 (Mo. banc 1972). The rule does not make the underlying felony an element of the felony-murder; it merely provides an additional means of proving the requisite felonious intent for murder. State v. Jasper, supra; State v. Shuler, 486 S.W.2d 505 (Mo.1972).

 Defendant Chambers was charged with and convicted of stealing a motor vehicle, the elements of which, under Sections 560.156 and 560.161, supra, are an intentional taking of property of another without his consent and with intent to deprive the owner of the use thereof, State v. Webb, 423 S.W.2d 795 (Mo. 1968); and four counts of murder, second degree, the elements of which under Section 559.020, supra, are the premeditated, willful, and intentional taking of a human life with malice aforethought, State v. Jewell, 473 S.W.2d 734 (Mo.1971). The elements of the two offenses are thus dissimilar. The commission of the underlying felony, stealing, is not an element of the murders in the second degree. With respect to the murders, the underlying felony serves only to prove the intent or state of mind necessary to the murders; and proof of the underlying felony proves both it and the intent necessary to the murder charges. Proof of different elements is necessary to each offense, even though the same evidence may go to both offenses. The offense of stealing requires proof of a taking of property; the offense of murder requires proof of a killing. Thus, the two offenses, stealing and murder, second degree, are not merged, but are separate and distinct in law and in fact. State v. Toombs, supra; Cardarella v. United States, supra; Blockburger v. United States, supra.

Several cases have recognized the absence of double jeopardy in analogous situations. In State v. Bobbitt, 228 Mo. 252, 128 S.W. 953 (1910), defendant was first

charged and acquitted of murder, first degree, perpetrated during attempted arson of a house. He was subsequently charged and convicted of the attempted arson of the house. Upon appeal, defendant contended he was twice placed in jeopardy because in the murder case the state prosecuted on the theory that defendant was guilty of murder, first degree, for killing the victim while burning or attempting to burn his house, and the State was now barred from prosecuting him for the same burning, i. e., that the arson now charged was the arson offered as evidence in the murder case and it was a necessary element of the murder case. The court held that acquittal on the murder charge was no bar to the prosecution for the underlying arson. In State v. Moore, supra, defendant was charged and convicted of the murder, first degree, of one Heller. He was subsequently charged and convicted of the underlying robbery out of which the murder of Heller arose. In refusal of a plea of double jeopardy, the court reviewed the Missouri position on double jeopardy:

"Our Constitution * * *, as well as the common law, proscribes the putting again (or twice) in jeopardy of life or liberty any person for the same offense. Certainly, if defendant had been again tried for first-degree murder for the killing of Heller, he could have pleaded successfully former jeopardy, for he would have been tried for the same offense. * * * although it is unnecessary so to decide, for the questions are not here involved, * * * the plea of former jeopardy probably would be sustained as to the lesser or lower grades or degrees of homicide or assault necessarily included in and apposite to first-degree murder, such as second-degree murder, manslaughter, etc., for such lesser degrees are included within the same offense. But murder and robbery are not the same offense, nor does one necessarily emanate from the other. While their common essential element is that of assault, yet they are distinct and separate statutory offenses.

"* * * It may be that during the same transaction both offenses are committed, yet they remain separate and distinct offenses and are not the same offense. It may be that on a trial for either offense evidence as to the other offense is admissible as a part of the res gestae, but this does not constitute them the same offense. Distinct and separate offenses are not to be held merged because they happen to grow out of the same transaction.

"Defendant cites State v. Mowser, 92 N.J.Law 474, 106 A. 416, 4 A.L.R. 695, to sustain his position. That case is seemingly predicated on the postulate that the occurrence out of which the offenses issued was one inseparable transaction. This may be called the 'same transaction rule.' Missouri, according to our decisions, prefers to follow the separate or several offense rule, and we have held that an offender is not to be exonerated from responsibility for his acts because his desires or passions persuade or impel him to commit two or more offenses during a transaction or occasion. State v. Martin, 76 Mo. 337; State v. Bobbitt, 228 Mo. 252, 128 S.W. 953; State v. Temple, 194 Mo. 228, 92 S. W. 494. The general rule on the subject is stated in 8 Ruling Case Law, page 148, § 133, reading: 'When a single transaction constitutes two or more offenses, wherein the lesser offense is not necessarily involved in the greater and when the facts necessary to convict on the second prosecution would not necessarily have convicted on the first, then the first prosecution will not be a bar to the second.' " 33 S.W.2d l.c. 906, 907. Cf. State v. Richardson, 460 S.W.2d 537 (Mo.banc 1970), where the necessary act toward commission of attempted robbery was the identical assault upon which the charge of assault to maim without malice was based and where defendant had been convicted of attempted robbery subsequent prosecution for assault with intent to maim was violative of the rule against double jeopardy; and State v. Neal, 514 S.W.2d 544 (Mo.banc 1974), where the robbery of one Walton charged

in Count I was the result of the assault committed upon Walton and was the identical assault charged in Count III. There was thus a splitting of the single crime of robbery and prosecution of it in both Counts I and III was violative of the rule against double jeopardy.

Appellant's citations from foreign jurisdictions do not persuade an overturning of the foregoing authorities. State v. Carroll, 282 N.C. 326, 193 S.E.2d 85 (1972); State v. Thompson, 280 N.C. 202, 185 S.W.2d 666 (1972), and Colle v. Henderson, 350 F.Supp. 1010 (W.D.La.1972), interpret felony-murder rules so as to make the underlying felonies an essential element of or lesser included offense in the murder itself; and State v. Thomas, 114 N.J.Super. 360, 276 A.2d 391 (1971), reached appellant's desired result by applying a "same evidence test" as opposed to the dissimilar elements or separate or several offense test prevalent in Missouri. State v. Toombs, supra; Blockburger v. United States, supra.

In summary, where a homicide is prosecuted under the felony-murder rule, the other felony does not become, *a fortiori*, merged in or an element of the offense of murder, and the defendant may be prosecuted for both the homicide and the underlying felony without being twice placed in jeopardy if the conviction of each offense requires proof of essential elements not required for conviction of the other. Accordingly, the convictions of this defendant did not violate the rule against double jeopardy because, as demonstrated, the underlying felony of stealing required proof of essential elements differing from or not necessary to the felony-murders in the second degree.

Appellant contends (II) that the information was fatally defective and insufficient to charge felony-murder in the second degree because it did not charge the underlying felony, stealing a motor vehicle, or its manner of commission "as being in-

herently or foreseeably dangerous to human life."

Related to this contention is appellant's plain error charge that the court erred (III) in its instructions 9A and 10 because they "did not properly state the law that the underlying felony or its manner of commission had to be inherently or foreseeably dangerous to human life."

Appellant's argument is that when the felony-murder rule is applied under Section 559.010, supra, the felonies there enumerated, arson, rape, robbery, burglary, or mayhem, as underlying felonies for felony-murder, first degree, are possessed of inherent or foreseeable danger to human life; but that when applied under Section 559.020, supra, felonies other than those enumerated in Section 559.010 as felonies underlying murder, second degree, must be charged and submitted as having been committed in a manner inherently or foreseeably dangerous to human life; and that otherwise murders in the second degree arising from nonviolent felony situations would produce unintended and incongruous results.

Appellant, again, would support his position with citations from foreign jurisdictions, e. g., People v. Satchell, 6 Cal.3d 28, 98 Cal.Rptr. 33, 489 P.2d 1361 (1971); People v. Pavlic, 227 Mich. 562, 199 N.W. 373 (1924); State v. Thompson, supra; Jenkins v. State, 230 A.2d 262 (Del.1967); People v. Golson, 32 Ill.2d 398, 207 N.E.2d 68 (1965); People v. Lilliock, 265 Cal. App.2d 419, 71 Cal.Rptr. 434 (1968). He asserts that "in all Missouri cases researched by appellant, the facts were such as to fall within one or more of the aforementioned lines of authority," e. g., State v. Simpson, 471 S.W.2d 173 (Mo.1971), where the felon stole an automobile tape player and shot the victim who was observing the theft; State v. Lewis, 273 Mo. 518, 201 S.W. 80 (1918), where two felons who had been stealing automobiles were armed and killed a police officer; State v. Beal, 470 S.W.2d 509 (Mo. banc 1971), where

fleeing felons fired shots at pursuing police officers and collided with another car, killing an occupant. Also cited is State v. Glover, 330 Mo. 709, 50 S.W.2d 1049 (1932), which appellant recognizes "does not use it as a limitation, [although] the court plainly acknowledged that in deciding whether or not to use the Felony-Murder Rule in any given situation one should consider whether 'the felony is dangerous' or 'betokens a reckless disregard of human life.' "

■ The difficulty in appellant's position is two-fold: First, the suggested consideration whether the underlying felony is dangerous or betokens a reckless disregard of life, was satisfied in this case by the evidence showing that the underlying felony of stealing a motor vehicle was accomplished by towing it on a major highway in darkness without lights, weaving from side to side, and after drinking. The collision and resulting deaths attest to the violence and danger in such actions.

■ Appellant's second difficulty is illustrated by State v. Jasper, 486 S.W.2d 268 (Mo. banc 1972), in which four armed men robbed a market. As they emerged with guns in hand, they were observed by a police officer in a marked vehicle. The robbers fled, defendant and one Beal using an automobile. The officer called to them to halt, and fired two shots in the air. A high speed chase followed until the car, driven by Beal, collided with another and one of its occupants was killed. In noting the sufficiency of a case of felony-murder, second degree, the court observed: " * * * Missouri recognizes the common law felony-murder rule under which a homicide committed in connection with a felony other than those enumerated in Section 559.010 is murder in the second degree, absent other evidence from which the jury could find the elements necessary to a finding of murder in the first degree. * * * the flight by defendant and Beal from the site of the robbery could consti-

tute a continuation of the robbery and hence be a sufficient basis for sustaining a first degree felony-murder charge. State v. Beal, supra. [470 S.W.2d 509]. However, contrary to defendant's position, the acts of defendant and Beal in fleeing after the officer shouted to them to halt and after he fired his gun in an attempt to halt them also could sustain a charge of resisting lawful arrest * * *. Since resisting arrest is not one of the felonies specified in § 559.010, evidence thereof would have justified a submission of the case to the jury by an instruction on murder in the second degree based on a finding by the jury that the homicide occurred in connection with the offense of resisting arrest." 486 S.W.2d l.c. 271 [1–3].

This distinction of felony-murder in the first and second degrees and the lack of any requirement such as that argued by appellant in the charge and submission of felony-murder, second degree, was well stated in State v. Lindsey, 333 Mo. 139, 62 S.W. 2d 420, 425 (1933): " 'Where parties are engaged in the commission of one of the felonies enumerated in section [559.010, RSMo 1969], if a homicide accompanies and is incidental to the enterprise, whether intended or not, it is murder in the first degree; if the intention is to commit some felony other than those enumerated in that section, such homicide, *although unintentional*, is murder in the second degree under Section [559.020, RSMo 1969] * * *.' " Again, the illustration of the "other felony" sufficient to underlie felony-murder in the second degree was the felony of jailbreak which is not necessarily inherently or foreseeably dangerous to human life. See also State v. Robinett, 279 S.W. 696 (Mo.1926), where felony-murder second degree, was successfully founded on the felonious manufacture of intoxicating liquor and the victim was killed while moving his mash to a place of concealment. In determining whether defendant was engaged in the felonious manufacture of liquor while moving his mash, the court observed, apropos the present case: "The

common-law rule is that, after the commission of a felony, if the criminal, in attempting to make way with his plunder, incidentally commits a homicide, he is guilty of murder. Wharton on Homicide, p. 186." 279 S.W. 1.c. 699 [4].

The rationale of these authorities is that in cases of felony-murder in the second degree, the defendant has formed a criminal intent to commit the underlying felony; and if he proceeds with its perpetration, he should answer to the consequences of his intentions, including accountability for homicides that occur incidental to the underlying felony. He ought not be heard to say that he entered into his felonious purpose without the intent to cause a death because the felony he intended to perpetrate was not supposed to result in death. It is only because of his felonious purpose that another person is dead. See State v. Shuler, 486 S.W.2d 505 (Mo.1972).

Appellant contends (IV) that the court erred in trying and submitting the four counts of murder where they arose "from one act or transaction." He stated the question to be "whether a single act and intent supplied by a fiction of law resulting in multiple deaths is one offense or a number of offenses equal to the number of deaths."

Appellant concedes that State v. Whitley, 382 S.W.2d 665 (Mo.1964), holding that there shall be as many offenses of manslaughter as there are human beings killed, whether by one act or several, "seemingly answers this question." He asserts, however, that State v. Whitley "is not relevant to the case at bar, and even if relevant, it should be overruled," and that multiple deaths arising under the felony-murder rule should be held to be a single offense of murder.

In support of his assertion of irrelevancy, appellant argues that State v. Whitley did not address the question of multiple deaths resulting from an offense requiring the element of intent; and that it imputed to the legislature an intent that "every killing," as used in Section 559.070, RSMo 1969, V.A.M.S., defining manslaughter, means that each such killing is a separate offense, whereas Section 559.020, defining murder, second degree, is not so specific.

In support of his assertion that State v. Whitley should be overruled, appellant is, again, forced to rely upon cases from foreign jurisdictions, e. g., Crocker v. State, 204 Tenn. 615, 325 S.W.2d 234 (1959); State v. Wheelock, 216 Iowa 1428, 250 N. W. 617 (1933). Similarly, in support of his assertion that multiple felony-murders should be but a single offense, he cites State v. Mills, 51 N.J. 277, 240 A.2d 1 (1968), and Thessen v. State, 508 P.2d 1192 (Alaska 1973), which held the single transaction and not its results to be the offense.

In this case appellant, in addition to a charge of felonious stealing, was charged and convicted of four separate and distinct offenses, the murder of four human beings, and those four separate offenses were committed even though they arose out of and in the course of the same acts constituting the underlying felony. Accordingly, State v. Whitley, supra, is controlling. Appellant's argument and authorities which apply different tests, e. g., the New Jersey single transaction test, State v. Mills, supra, do not persuade that State v. Whitley is irrelevant in answer to appellant's contention or that it should be overruled. See State v. Moton, supra, which affirmed two convictions of defendant for armed robbery of two service station attendants on the theory of one act but two separate offenses where both robberies occurred almost simultaneously in a same or single transaction. See also State v. Smith, 491 S.W.2d 257 (Mo.1973), certiorari denied, Smith v. State, 414 U.S. 1031, 94 S.Ct. 460, 38 L.Ed.2d 322 (1973), which affirmed two convictions of defendant for felony-murder of a man and his wife where both killings occurred during the robbery of the husband and the rape of his

wife, a same or single transaction, and both offenses when tried separately were proved by substantially the same evidence. Note also that the trial of defendant Chambers under Rule 24.04, V.A.M.R., would satisfy the objections of Justices Brennan, Douglas, and Marshall, dissenting in Smith v. State: "Although both charges * * * arose out of the same transaction or episode, they were prosecuted * * * in separate proceedings. That * * * requires that we grant the petition * * * and reverse, for * * * the Double Jeopardy Clause * * * requires the prosecution, except in extremely limited circumstances not present here, 'to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode or transaction.' Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469." See also Carpenter v. State, 513 S.W.2d 702 (Mo.App.1974).

■ Finally, appellant charges the court with plain error (V) in its Instruction No. 6 which covered defendant's presumption of innocence and the standard of reasonable doubt. The instruction and attack are the same as in State v. Davis, 482 S.W.2d 486, 489 (Mo.1972), where the complaint was noted to have been "frequently raised and found not meritorious." See also State v. Lovell, 506 S.W.2d 441 (Mo. banc 1974). United States v. Atkins, 487 F.2d 257 (8th Cir. 1973), considered this matter with some favor, disapproving "the alternative statement that reasonable doubt means a substantial doubt." That court, however, refused to "say that the giving of this instruction * * * constituted plain error * * *." 487 F.2d 1.c. 260 [9]. See also State v. Yarbrough, 506 S.W.2d 90, 92[1] (Mo.App.1974). This matter should no longer arise in Missouri because MAI–CR 2.20 is the only instruction to be given on this subject and it cures the complaint by omission of the questioned equation.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The Division One opinion by HIGGINS, C., is adopted as the opinion of the Court en Banc.

MORGAN, HOLMAN, HENLEY, FINCH and DONNELLY, JJ., concur.

SEILER, C. J., dissents in separate dissenting opinion filed.

BARDGETT, J., dissents and concurs in separate dissenting opinion of Seiler, C. J.

SEILER, Chief Justice (dissenting).

I respectfully dissent from the portion of the principal opinion which allows the commission of any felony to be the basis for a second degree murder conviction. This holding is, in my opinion, unsound, inconsistent with the doctrine of felony murder in the first degree, and serves to extend that doctrine "beyond any rational function that it is designed to serve." People v. Washington, 62 Cal.2d 777, 44 Cal.Rptr. 442, 402 P.2d 130 (1965).

Our legislature has enumerated those felonies which they perceived to be so inherently dangerous to human life that when a homicide occurs during the commission thereof, liability for murder in the first degree is supplied by the fact of the felony alone, Sec. 559.010 RSMo 1969, V. A.M.S. Our statute was modeled after Pennsylvania's, State v. Meyers, 99 Mo. 107, 12 S.W. 516 (1889), and the supreme court of that state has explained it as follows: ". . . [I]n cases of homicide in the perpetration of certain offences, viz., arson, rape, robbery, burglary, all idea of intention was excluded. The act in which the malefactor was engaged was of such a nature, so deep a crime, involving such turpitude of mind, and protection against which was so necessary to the peace and welfare of all good citizens, that our Legislature considered the intention as of no

consequence, and accordingly decreed death to be the penalty of such offences . . .", Commonwealth v. Flanagan, 7 Watts & S. 415, 418 (Pa.1844). Accordingly, it is irrelevant whether the death is intended, or whether the enumerated felony is committed in a dangerous manner, or on the contrary is committed in a manner calculated to avoid such a risk of death, as where an arsonist takes precautions to insure that no one is in the building he intends to burn, but a person concealed therein is nevertheless killed. These felonies are viewed in the abstract, and utilize only the original felony to create liability for murder in the first degree. See MAI–CR 6.16–6.19: if the jury finds that the defendant was committing one of the enumerated felonies and death resulted thereby, they are instructed to find the defendant guilty of murder in the first degree. It is also significant to note that prior to 1879, our first degree murder statute provided that a homicide shall be murder in the first degree when committed in the perpetration of any arson, rape, robbery, burglary *or other felony*. Missouri General Statutes, c. 200, Sec. 1 (1866). By 1879, however, this section had been amended, substituting the words "or mayhem" for "or other felony". Missouri Revised Statutes, Sec. 1232 (1879).

Our second degree murder statute, Sec. 559.020 RSMo 1969, V.A.M.S., includes "All other kinds of murder at common law, not herein declared to be manslaughter or justifiable or excusable homicide . . ." The doctrine of felony murder in the second degree has not been used extensively in Missouri; generally, however, it is associated with violent crimes. See, for example, State v. Hayes, 262 S.W. 1034 (Mo. 1924) (conspiracy to "beat up" victim resulting in victim's death); State v. Lindsey, 333 Mo. 139, 62 S.W.2d 420 (1933) (defendants beat a fellow prisoner to death while escaping from jail); State v. Holloway, 355 Mo. 217, 195 S.W.2d 662 (1946) (sheriff killed during a jailbreak); State v. Jasper, 486 S.W.2d 268 (Mo.banc 1972) (victim killed while defendant was resisting arrest).

In none of these cases was the nature of the underlying felony ever at issue. We do, however, find two cases involving felonies which cannot be said to be dangerous to human life. In State v. Robinett, 279 S.W. 696 (Mo.1926), the victim was killed by defendant's son during their effort to transport mash (from the illegal manufacture of liquor—a felony) to a place of concealment. In State v. Wright, 337 Mo. 441, 85 S.W.2d 7 (1935), there was evidence that a "robbery" during which the victim was killed was staged in order to defraud an insurance company—a felony. In both these cases, the court held that a second degree murder conviction might rest on the underlying felonies without discussion as to the nature of those felonies. But see State v. Sharpe, 326 Mo. 1063, 34 S.W.2d 75 (1930), where there was conflicting evidence as to whether there was a robbery or a larceny, the court held that if the crime was only larceny, a jury could find that the homicide was only manslaughter.

State v. Robinett, supra, and State v. Wright, supra, appear to be aberrational and incorrectly decided. Neither of the underlying felonies in those cases were felonies at common law, and so could not have supported a conviction of "murder at common law" such as to fall within our second degree murder statute. See People v. Pavlic, 227 Mich. 562, 199 N.W. 373 (1924), where the defendant sold liquor under circumstances amounting to a felony in those days; the purchaser became drunk and died of exposure. The court stated that the homicide could not be murder since the underlying crime was not a common law felony and was not itself directly and naturally dangerous to life. See also Commonwealth v. Exler, 243 Pa. 155, 89 A. 968 (1914), where the victim died from shock resulting from the commission of statutory rape; the court held that the unintended death was not murder since statutory rape was not a common law felony. This case should be particularly noted since our murder statutes were modeled after those of Pennsylvania, State v. Mey-

ers, supra. The soundness of these decisions is aptly illustrated by a Kentucky court, which stated, ". . . Under our statute, the removal of a corner stone is punishable by a short term in the penitentiary, and is therefore a felony. If, in attempting this offense, death were to result to one conspirator by his fellows accidentally dropping the stone upon him, no Christian court would hesitate to apply this limitation . . .", i. e., the death would not be murder. Powers v. Commonwealth, 110 Ky. 386, 61 S.W. 735 (1901).

But more important than the question of whether or not a particular felony could support a conviction of murder at common law, a rule which includes only inherently dangerous felonies in the doctrine of felony murder is supported by history, common sense, and logic. At common law, a homicide was either murder or manslaughter, and there were no degrees of murder. Wharton on Homicide, 147 (3d ed. 1907). Furthermore, all felonies were punishable by death, 4 Blackstone Comm. 95–98 (Lewis' ed. 1900). The relation of these two facts to the genesis of the felony murder doctrine is described by Perkins as follows:

"Since the would-be felon was willing to risk his life, it was relatively unimportant that he became guilty of a capital crime in a different manner than he intended. The primary purpose of the rule, it may be mentioned, was to deal with the case in which the homicide was caused in an attempted felony which failed. Conviction of felony resulted in total forfeiture, the loss of life and lands and goods, so nothing would have been added by establishing guilt of a second felony. At attempt to commit a felony, however, was a mere misdemeanor at common law. Hence to hold guilty of a capital crime one who made an unsuccessful attempt to commit burglary during which he had caused the loss of human life, however unintentionally and unexpectedly, put the wrongdoer in no worse position, in legal theory, than if he had succeeded in committing burglary without homicide. At the present time, with the removal of most felonies from the category of capital crimes, the reason for the rule has ceased to exist." Perkins, The Criminal Law 44 (2d ed. 1969).

Thus, with the general trend toward mitigation in the harshness of punishment for many felonies, and the addition of many statutory felonies which were unknown to and not of the same dangerous character as those at common law, the application of an unlimited felony murder rule became increasingly irrational and unfair. The English courts began to impose limitations on the doctrine, and in the leading case of Regina v. Serne, [1887] 16 Cox Cr.Cas. 311, it was said, ". . . instead of saying that any act done with intent to commit a felony and which causes death amounts to murder, it would be reasonable to say that any act known to be dangerous to life, and likely in itself to cause death done for the purpose of committing a felony which caused death, should be murder." See also Director of Public Prosecutions v. Beard, [1920] A.C. 479. Eventually, Parliament abolished the felony murder doctrine altogether, Homicide Act of 1957, Sec. 1.

We are of course bound by the doctrine of felony murder as expressed in Sec. 559.-010, murder first degree, notwithstanding the absence of its original purpose. It has been well stated that the only remaining justification for the continued existence of the doctrine is to furnish an added deterrent to the perpetration of those felonies which by their very nature create a likelihood of danger to life,[1] by making the fel-

---

1. In fact, however, there is proof that homicides resulting from these felonies are much less frequent than might be supposed. According to the District of Columbia Crime Commission, for example, less than one half of one percent of the robberies and about one percent of forcible rapes are accompanied by homicide. The Challenge of Crime in a Free Society, Report by the President's Commission on Law Enforcement and the Administration of Justice 19 (1967). See also ALI, Model Penal Code, Sec. 201.2 (Comment, Tent. Draft No. 9, 1961), with earlier statistics to the same effect.

on liable for murder even when death is unintended and accidental. People v. Satchell, 6 Cal.3d 28, 98 Cal.Rptr. 33, 489 P. 2d 1361 (1971); Jenkins v. State, 230 A.2d 262 (Del.1967).

The rationale of deterrence, however, cannot justify the inclusion of *any* felony to support a murder conviction. If the felony is not inherently dangerous, the added sanction of murder liability will not deter the potential felon, for it is highly unlikely that he will anticipate that death will occur solely from the fact that he will commit a felony. See Jenkins v. State, supra at 269. Justice Holmes, in discussing the application of the felony murder doctrine to a situation where one who shoots chickens for the purpose of stealing them accidentally kills a man in the chickenhouse, stated, ". . . If the object of the rule is to prevent such accidents, it should make accidental killing with firearms murder, not accidental killing in the effort to steal; while if its object is to prevent stealing, it would do better to hang one thief in every thousand by lot . . .", Holmes, The Common Law 58 (1881).

Since the felonies enumerated in our first degree murder statute are inherently dangerous, it would be inconsistent therewith to allow *any* felony to support a conviction for murder in the second degree. Such a holding would "widen the gap between moral culpability and criminal liability" and extend the doctrine of felony murder far beyond any rational function it is designed to serve. People v. Washington, supra. Many writers have severely criticized the rule and strongly advocated against its expansion. See for example, Perkins, A Re-Examination of Malice Aforethought, 43 Yale L.J. 537, 563 (1934); Michael & Wechsler, A Rationale of the Law of Homicide, 37 Col.L.Rev. 701, 713–715 (1937); Note, 35 Journal of the Association of Trial Lawyers of America 296 (1974); American Law Institute, Model Penal Code, Sec. 201.2 (Comment, Tent. Draft No. 9, 1961).

It is significant to note that nearly all jurisdictions place some limitation on the felonies which can support a murder conviction; such felonies must be either inherently dangerous or committed in a manner dangerous to life. See 40 Am.Jur.2d, Homicide Sec. 73; Annot., Felony-Murder —"Dangerous" Felonies, 50 A.L.R.3d 397; Note, 35 Journal of the Association of Trial Lawyers of America, supra. The "inherently dangerous" test is to be preferred to the "manner of commission" test in that it is consistent with the principles governing felony murder in the first degree, i. e., the manner of commission is irrelevant and the felony is viewed in the abstract. Furthermore, the manner of commission test becomes devoid of meaning by virtue of hindsight; if a death occurs, one can immediately consider that the felony was committed in a dangerous manner—otherwise the death would not have occurred. And as the California supreme court so aptly stated, ". . . To fragmentize the 'course of conduct' of defendant so that the felony-murder rule applies if any segment of that conduct may be considered dangerous to life would widen the rule beyond calculation. It would then apply not only to the commission of specific felonies, which are themselves dangerous to life, but to the perpetration of *any* felony during which defendant may have acted in such a manner as to endanger life. . . . [T]he number or nature of the contexual elements which could be incorporated into an expanded felony terminology would be limitless. We have been, and remain, unwilling to embark upon such an uncharted sea of felony murder." People v. Satchell, supra, 98 Cal.Rptr. at 39–40, 489 P.2d at 1367–1368. See also State v. Moffitt, 199 Kan. 514, 431 P.2d 879 (1967), where the supreme court of Kansas adopted the "inherently dangerous" test.

In the case at bar, the underlying felony is stealing, Sec. 560.156, RSMo 1969, V.A. M.S., which is not a felony enumerated for murder in the first degree, and, unlike robbery which involves direct confrontation

with the person whose property is being taken, stealing is not a felony dangerous to life when viewed in the abstract. Automobile theft is one of the most common crimes today, and ought not to be the basis for a conviction of murder in the second degree, especially when there are more relevant criteria to be found in our manslaughter statutes which properly apply to the state of mind demonstrated by the defendant under the facts of this case. It is both unnecessary and unjustifiable to give the legal fiction of felony murder any more broad a sweep than it presently possesses; the law is perfectly capable of punishing defendants for reckless and wanton conduct under conventional homicide statutes. For these reasons, I would reverse the murder conviction, leaving the prosecutor to file a new information if so advised. If such be the outcome of this case, I would affirm the conviction for stealing, as this disposition of the matter would eliminate the double jeopardy problems discussed later herein and would leave only the stealing conviction, as to which, when considered alone, I see no error.

On the other hand, if this view is not to prevail and if the second degree murder conviction is allowed to stand, then I must also dissent from the portion of the principal opinion affirming the stealing conviction and holding that the defendant is not being twice put in jeopardy for the same offense. While the principal opinion concludes that the underlying felony is not an "element" of the crime of second degree murder, but merely goes to prove the requisite mental state for that crime, such a conclusion is immaterial. Regardless of the rationale behind the felony murder doctrine, the fact remains that in order to reach a verdict of guilty for second degree murder, the state need prove only the fact of the felony and a homicide in the perpe-

tration thereof. In this case the jury was instructed in no more complicated terms than these. With this in mind, the case at bar becomes indistinguishable from State v. Neal, 514 S.W.2d 544 (Mo. banc 1974) and State v. Richardson, 460 S.W.2d 537 (Mo. banc 1970). In those cases it was held that a defendant could not be convicted both of robbery and the assault which constituted the violence to the victim incidental and necessary to robbery. Similarly in State v. Parsons, 513 S.W.2d 430 (Mo. 1974), it was held that a defendant could not be convicted both of murder and the bombing which caused the death of the victim. The court stated that ". . . the necessary act toward the commission of the bombing was the identical act necessary to constitute the crime of murder. The bombing was an incident included in the crime of murder as charged . . ." and the state may not obtain a conviction "not only of the crime of murder by bombing but also a conviction for the incident of bombing." Id. at 438. As stated in In re Nielsen, 131 U.S. 176, 188, 9 S.Ct. 672, 676, 33 L.Ed. 118 (1889), ". . . where . . . a person has been tried and convicted of a crime which has various incidents included in it, he cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offense."

Just as a bombing may not be prosecuted as a crime in itself if it is the same bombing incident to a homicide, neither can the stealing in this case be separated and prosecuted as another offense where it is the same stealing incident to the second degree murder conviction. The lesser crime is "used up" in the greater and ought not to be "thrown in" as a separate charge now that rule 24.04 makes it more easily possible for prosecutors to try more than one offense in a single proceeding.